The second case this morning is case number 4141093 Fink v. The Department of Central Management Services for the appellant Frank Bissette, and for the appellant Michael O'Hara. You may proceed. May it please the court? My name is Frank Bissette, and I represent the defendants, the Department of Central Management Services in the state of Illinois. This court should reverse the circuit court's order granting a preliminary injunction in this case because plaintiff has not demonstrated that any of the four requirements for a preliminary injunction are satisfied in this case. Because each of the four requirements must be established in order for an injunction to issue, the failure to satisfy even one of the requirements renders the injunction improper. Most clearly, plaintiff has not demonstrated that he enjoys a likelihood of success on the merits of his underlying claim or that he lacks an adequate remedy at law in the absence of an injunction. First, plaintiff cannot succeed on his mandamus claim because he is attempting to exert control over a discretionary decision by a public official by seeking an order that would mandate a specific outcome with regard to that discretionary decision. Mandamus may only be issued to compel a public official to perform a ministerial duty that does not require the exercise of any discretion. The decision of whether to adjust an employee's salary is left to the discretion of the director of CMS and is based upon a consideration of a number of factors set forth in the administrative code. In his complaint, plaintiff alleges a procedural error by claiming that the director did not take those factors into account when he decided to adjust plaintiff's salary. But then, rather than seeking a remedy that would redress that procedural error by requiring the director to reconsider his decision in light of those factors in the administrative code, he is seeking an order requiring defendants, the State and CMS, to pay him at the pre-adjustment salary. Therefore, there is a fundamental disconnect between plaintiff's allegations of error and requests for relief. Counsel, can we back up? Of course, opposing counsel indicates that this was a TRO that was issued by the court and therefore we don't have jurisdiction. What's your position on that? Well, initially, Your Honor, this court has already resolved that issue by denying plaintiff's motion to dismiss this appeal for lack of jurisdiction. But this court does have jurisdiction under Rule 307A1 because it was filed within 30 days of the order, which was a preliminary injunction. And it is clear from the record that the underlying order was a preliminary injunction because the circuit court judge made clear at the beginning of the hearing that he was going to rule on plaintiff's request for a preliminary injunction. Throughout the hearing, it was referred to as a preliminary injunction. And then in the order itself granting the relief, granted a preliminary injunction in both name and substance where the circuit court repeatedly called it a preliminary injunction and did not set any defined end date for the injunction, which if you had that, then that would indicate that that is a TRO. But here, a preliminary injunction was granted. And while plaintiff is alleging in his complaint that the director did not comply with the procedures for making the underlying decision to adjust his salary, he is not seeking a procedural remedy that would redress that error by, for example, requiring the director to reconsider the decision in light of those factors. Instead, he's asking for an order that would mandate a specific outcome with regard to that discretionary issue of whether or not an adjustment was warranted under the facts of this case by asking for an order requiring CMS and the state to pay him at that pre-adjustment salary. Because mandamus cannot be used to compel a public official to exercise his or her discretion in a particular manner, plaintiff cannot obtain the relief he is seeking in a mandamus order, and therefore he does not enjoy any likelihood of success on the merits of his underlying claim, and the injunction was improper. This is so also because plaintiff only raises one claim in his complaint. He alleges that the director failed to comply with the procedures in the administrative code, and then as relief, he asks for a mandamus order, back pay, and costs and fees. While the title of his complaint indicates that he is also seeking a permanent injunction, he does not request that relief or allege a claim that would support any such relief in the body of his complaint. But even if he had, that claim would be barred by a straightforward application of sovereign immunity, because plaintiff would be bringing his claim against the state and CMS state agency, and would be requesting an injunction requiring the state and the state agency to engage in specific conduct by paying him at the pre-adjustment salary. And this result is not changed by the Supreme Court's recent decision in Leetaru, because in that case, the Supreme Court held that the plaintiff's claim fell within the officer's suit exception to sovereign immunity, because the plaintiff was seeking an injunction requiring individual state agents to engage, or prohibiting individual state agents from engaging in certain conduct. Whereas here, plaintiff is not seeking an order requiring any individual state agents to engage in conduct. Rather, he's specifically asking for an order requiring the named defendants, the state and CMS state agency, to pay him at the pre-adjustment salary. For those reasons, plaintiff does not enjoy a likelihood of success on the merits of his underlying mandamus claim, and even if he raised any other claim, that claim would be barred by sovereign immunity. Now, plaintiff's inability to satisfy that one requirement alone renders the injunction improper, but in addition, plaintiff has not demonstrated that he lacks an adequate remedy at law in the absence of an injunction. Preliminary injunctions is an extraordinary remedy that is only issued in limited, extraordinary circumstances, and Illinois courts have consistently held that a circuit court cannot grant a preliminary injunction when the plaintiff's injury could be quantified and compensated by an award of money damage. In this case, the plaintiff is challenging the decision to adjust his salary, and therefore the injury he has suffered as a result of that action is the loss of wages in between his pre-hire pre-adjustment salary and his lower post-adjustment salary. Because there's no dispute that that amount could be calculated with relative ease and certainty, any injury that plaintiff might suffer during the course of litigation, if he prevails on the merits of his claim, could be compensated by an easily calculable money damages award. I was just going to say plaintiff argues that it's inadequate because there will be consequential damages and a later award won't provide the same sort of relief that he can obtain now because he's going to have the inability to pay bills and so forth. Is that the appropriate examination in terms of determining whether there's an adequate remedy at law? And let me piggyback onto that, and that's kind of where I was going as well, about the damage to his credit. How do you quantify that if your credit is damaged because you can't pay your bills? Well, first, Your Honor, I would say that that's not the correct framework to look at this issue because that would expand the scope of what constitutes an adequate remedy at law. It's one that not only compensates a party for any injuries that he may suffer as a result of the defendant's conduct, but would also have to take into account any developments that subsequently occur as an indirect result of the injury that directly flows from the defendant's conduct. And for that reason, we cited a number of cases in our briefs pointing out how when an injury can be compensated by money damages, the circuit court not just errs but abuses its discretion by granting a preliminary injunction. And plaintiff in his response has not addressed any of those cases or cited any cases of his own to support his theory. An additional problem or an additional issue is that even if plaintiff's definition of what constitutes an adequate remedy at law was correct, he has not alleged sufficient facts in his complaint to establish that this is such a case. Because plaintiff bears the burden of alleging facts with certainty and precision that establish that he is entitled to a preliminary injunction, in this case, plaintiff has alleged a factual conclusion that he would not be able to make his debt payments under the post-adjustment salary. But he has not alleged any provable facts that could be proven to support that conclusion. For example, he has not alleged any facts about what types of debt obligations he's facing, the extent of his inability to pay them, or any of those things that would need to be proven in order to establish that he in fact does perhaps lack an adequate remedy at law or would suffer this additional injury absent a preliminary injunction. And for these reasons, because plaintiff cannot establish that he enjoys any likelihood of success on the merits of his underlying claim and has not established that he lacks an adequate remedy at law in the absence of an injunction, defendants ask that this court reverse the circuit court's order granting a preliminary injunction. And unless your honors have any further questions, I'll reserve any further argument. I see none, counsel. Thank you very much. You will have rebuttal. Thank you. Mr. O'Hara. May it please the court, counsel, I'm very nervous for a variety of reasons. When I have a migraine, I suffer from migraines. But Justice Turner and Justice White, I'm going to revert to what I did the last time. I'm going to deviate from oral arguments. And I hope because of what I'm going to say that you'll give me some indulgence to say what I want to say. And I'll be happy to answer any questions afterwards. But I feel compelled to do so for a variety of reasons that I think will become very clear once I'm finished. Two things I'd like to cite to the court beforehand. Actually, three. One is the only document that I brought with me other than the plethora of documents generated by this case was the Bible. And I'm not going to be selling religion, but there's a reference that I want to make that I think is relevant to this case. And I didn't bring it up here because as a young man, I memorized the New Testament. And I'm very familiar with it, which will become clear as well when I finish this argument. I'm not going to come back here voluntarily. I'm never going to come back to this Fourth District Appellate Court and argue. And it's because of the way I was treated and my client was treated in Docket 4-14-352. I'm not going to do that because I no longer believe in a system. And personally, I don't believe that. And I don't believe consciously in good faith I can do so. In order to justify that, I think if you give me the opportunity, I want to, before I answer any questions that counsel raised, I want to at least give you a little background of who I am and what I am so that there's no equivocation of my sincerity and my respect for this court. And that what I say is done in good conscience. I'm a product of poverty. I grew up in poverty. My mother raised us almost completely alone. There was five of us under the age of six. And I remember eating sugar sandwiches for a week at a time. That's two stale pieces of bread with a grain of sugar in the middle. And I remember not having the ability to have transportation, money to buy tires. I was employed at 17, not because I wanted to earn extra spending money, because I needed a roof over my head and food on my table. And when I matriculated at the University of Illinois in the University of Illinois Law School, graduating magna cum laude and getting a Phi Beta Kappa key, I don't remember matriculating without a full-time job. And I did so because I paid for every cent of my education other than that which paid, except for scholarship. And one other thing I think needs to be made so that it's very clear. I'm a religionist. Instead of studying the books in high school or undergraduate school or even law school, I studied comparative religions. Esoteric Christianity, Gurdjieffian Christianity, the Kabbalah, Esoteric Judaism, the Sifra, the Twelve Steps of the Trialite, the Bhagavad Gita, Upanishads, Tantric Sufism, Buddhism, the Koran. I know a little bit about religion and I came to the law through religion, not vice versa. So my perspective on this case is a little different. I understand and believe what a maintenance worker who has his minimum wages cut by one-fourth and then the state comes along and says that's the correct thing to do and then questions whether a court of equity can grant conjunctive belief. I offered to arbitrate this case and have an arbitrator decide the legal issues and the equitable issues and be bound by that decision as long as I could make the equitable issues so you wouldn't have to hear this case. And I asked for an expedited arbitration and indicated on behalf of the union and the plaintiff that if we lost, the arbitrator ruled against us, but the plaintiff was paying every penny back that he purportedly got because he was paid the quote-unquote incorrect wage. That, of course, was accepted by the Attorney General when he was representing CMS, but then reneged upon after I went on vacation out of the country. And when I came back, I was promised that we would get it worked out and then when finally it was clear that they were reneging, I had to file this injunctive belief. Now, the reason I'm not coming back here is because of that case that I had here before and I filed an appeal with the Illinois Supreme Court and whatever they do with it, whatever dispositive, they grant the petition to appeal five, whatever they do, once it's done, I will be writing a letter to each of the justice executives explaining why my conscience deprives me of the ability to come back here and argue because I simply don't believe in the system anymore. I don't believe that the judicial system, at least at this level, reflects what needs to be reflected. I think there's two systems now, one for the rich and one for the poor, one for the people in the known, people that don't. And I get it all the time with union people. My client doesn't understand. He asked me, in fact, I don't want to be flippant about this, but he asked me, didn't the judges in Illinois get a mandamus when they got denied their cost of living increase and the money wasn't appropriated? And I had to explain to him that, yeah, that happened, but that was because of separation of powers and even though it was a great, made his salary, dwarfed his salary, and it was only the cost of living, that mandamus was granted, but this fellow can't pay his bills. He's got creditors on his back. He can't pay for his car or his house or his food. But the state of Illinois doesn't want to have an arbitration and said they can't have an expedited arbitration and have a final decision. They wanted me to come here and talk to you folks, so that's what I'm doing. Now, let me indicate just a couple of things because I don't want to belabor this point, but I would ask you to write down Matthew chapter 20, verse 1 through 16. I could recite it verbatim right now if you want me to. In fact, if I have time, I'll do so. But I think it's relevant to this case because what CMS did to this person is exactly the opposite of what happened there. This wasn't fair. This wasn't equitable. This was wrong, and anybody looking at this case simply and objectively can see that. But let me make some remarks just about the case law because, Justice Turner, I want you to be assured that when I cite cases, I read the cases. In fact, I read the cases that my opponents cite. I don't just cite head notes. And when the Attorney General says this case is a de novo case, he cited one case. That was Russell v. Howe. That's cited on page 12 of his original brief, and it's page 4 in his reply brief. It's the only case he's citing. You read the case. It says it's de novo if the defendants don't file an answer or a response, which was omitted from the argument of the Attorney General. There was a response filed, a very detailed response in this one. It wasn't verified. It had a bunch of facts in it that disagreed with the facts that argued. They argued to the circuit court, cited it in their brief, and continued to argue those cases. And facts, disputed facts, like there was a mistake made. I alleged in my complaint that there was a mistake made. But that didn't stop the Attorney General from telling you that it's a de novo. It isn't. It's an abuse of discretion. And I just have a hard time having the Attorney General on behalf of CMS and the state of Illinois filing this appeal against a maintenance worker after they unilaterally slashed his wages by one-fourth so he couldn't pay his bills and then telling him he couldn't have an arbitration. He could have settled even when he promised to pay it back because they wanted to stretch it out. They wouldn't schedule the arbitration. Said they wouldn't do it until he got the TRO or preliminary injunction. It's a TRO, of course, because I filed for a TRO and asked for an immediate hearing. I got a hearing date 30 days after because the court was too crowded. Couldn't give me a hearing. So they had 30 days to answer. Didn't answer. So to make sure that I could, if they did file an answer on the day that they had a hearing, I wanted to make sure I could prove my case so there wasn't going to be any disputed facts. So I filed notices of appearances for seven people that I knew wrote memos indicating why this person should not have his wages slashed. And who were they written by? Well, they were supervisors at CMS. Not union people. Supervisors. Giving the reasons why this is wrong. Supporting my position. And I was going to send them and have them testify. And, of course, the attorney general said you can't present evidence, you can't send notices of appearance before we file an answer. We're not going to file an answer. We don't want an evidentiary hearing. Huh. Okay. So it's a TRO with notice. They say it's a preliminary injunction. Well, it isn't. But that's, you know, there's no jurisdiction here. This TRO, by the way, the court said this order goes on until order of the court or an arbitration takes place. I'm not going to go in, Justice Turner, about a collective bargaining agreement, but my individual client didn't sign the contract. He's not a party to the contract, as we noted in the last hearing. He has an individual right to detrimental reliance. So there are other reasons why this case is just wrong. Sovereign immunity. I want to make sure I explain that real quickly. My argument for sovereign immunity mirrors the Illinois Supreme Court's majority decision in Leotaro decided about a month ago, 2015. Mirrors it. It was a 4-3 decision. By the way, I didn't cite any case law. I just mirrored the equity argument almost exactly as the Supreme Court said it. So, and I don't mean this flippantly, I may have waived that argument. That would be the second time in 38 years I ever waived an argument on appeal. So the Supreme Court reversed this appellate court and indicating that, indeed, I had the ability to file a mandate. I notice counsel didn't mention that. He did file a supplemental motion, but indicated that the appeal, the time to file a petition re-hearing hadn't run well. They filed a petition re-hearing. It was denied. That's binding case law. So, and he said that only affects the sovereign immunity argument, but also argument in the likelihood of prevailing. I'm not here, you know, I put my arguments in my brief. I'm not going to do it. So if you have any questions, fine, but I just wanted to add to one thing. And again, I don't mention this flippantly, but I want to say it. All statutory amendments are enforced going forward. That doesn't make unobjectable the retroactive effect of a statutory amendment. Thank you. Thank you, Mr. O'Hara. Any rebuttal? Okay. I would just like to clarify that the issue that's raised in this appeal is whether plaintiffs satisfied each of the four requirements for a preliminary injunction and any other matters that may be involved in the arbitration proceeding are not an issue before this court. Council talked about the standard of review. I just wanted to briefly explain why this court should review this question de novo. Although orders to granting preliminary injunctions are generally reviewed for an abuse of discretion, questions of law are reviewed de novo. And here, the basis for the preliminary injunction were the allegations and the complaint. And therefore, whether or not plaintiff is entitled to a preliminary injunction is a question of law based on the allegations and the complaint. And so this court should review that question de novo just as it would review a 2615 motion, which asks essentially the same question de novo. So unless your honors have any further questions, that's all I have. I see none. So thanks to both of you, the court will stand in recess and the case is submitted. Thank you.